Debra J. PECK, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, and Paul S. Rose, Executive Director of the Utah State Department of Social Services, Defendants.

No. C 76–229.

United States District Court,
D. Utah, C. D.

June 30, 1977.

Michael D. Shepard, Salt Lake County Bar Legal Services, Salt Lake City, Utah, for plaintiff.

Ramon M. Child, U. S. Atty., Vernon B. Romney, Atty. Gen., State of Utah, Salt Lake City, Utah, for defendants.

ORDER DENYING PLAINTIFF'S MO-
TION FOR SUMMARY JUDGMENT
AND GRANTING THE CROSS–MO-
TION FOR SUMMARY JUDGMENT
OF DEFENDANTS

ALDON J. ANDERSON, Chief Judge.

This case has been submitted for final disposition on the strength of memoranda filed by the respective parties for summary judgment and dismissal. It unfolds but another chapter in the developing saga of the right of privacy and its relationship to issues of personal sexual activity and family planning. The plaintiff brings before the court a ·challenge to a federal regulatory moratorium on the provision of sterilization services to persons under 21 years of age— such persons being otherwise qualified for other voluntary family planning services and benefits provided by approved state programs pursuant to both Title XIX (Medicaid), 42 U.S.C. §§ 1396 *et seq.*, and Title IV, 42 U.S.C. § 602(a), of the Social Security Act. The plaintiff complains that the imposition of such a restriction is beyond the authority conferred by Congress upon the Secretary of Health Education and Welfare in administering the programs. The plaintiff also claims that the denial of her application for sterilization by reason of the moratorium is a violation of her right .to equal protection of the law under the Fifth and Fourteenth Amendments of the Constitution.

STATUTORY AUTHORITY FOR THE
MORATORIUM

The major impetus for the promulgation of the moratorium regulation on federal funding of sterilization procedures for those under 21 years of age, was the discovery of significant abuses in the ad-

ministration and provision of the sterilization service. Apparently, sterilization procedures funded under the federal statutes were being performed involuntarily and/or without informed consent upon minors and incompetents. *See Relf v. Weinberger*, 372 F.Supp. 1196 (D.D.C.1974). It appears, as the Secretary now argues, that the 21-year age requirement was implemented in order to ensure that the provision of sterilization procedures as a method of "family planning" is "voluntary" as required under the applicable statutes.[1] Section 1302 of 42 U.S.C. provides that:

> The Secretary . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter.

This court agrees that one of the "functions" with which the Secretary is "charged" is making certain that family planning services, including sterilization, are in fact voluntarily undertaken. The imposition of the 21-year minimum age requirement for provision of sterilization services cannot be seriously questioned as inconsistent with the statute or unnecessary to efficient administration by the Secretary. Accordingly, the plaintiff's challenge on the basis of lack of statutory authority is unfounded.

## CONSTITUTIONAL CHALLENGE TO THE MORATORIUM

Turning now to the plaintiff's constitutional attack upon the 21-year minimum age requirement, the court first notes what the Supreme Court has recently referred to as the "basic framework of analysis" applicable to an equal protection claim. In *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977), the Court quoted from its decision in *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the following:

> We must decide, first, whether [state legislation] operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny. . . . If not, the [legislative] scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute invidious discrimination.
>
> . . . .

It is plaintiff's claim in this case that the moratorium "impinges upon a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict judicial scrutiny" of the classification created. The fundamental right allegedly impinged is that described not infrequently in recent Supreme Court decisions as the "right of the individual . . . to be free from unwarranted governmental intrusion into . . . the decision whether to bear or beget a child." *See Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972).

In *Maher, supra*, essentially the same constitutional question was presented to the Supreme Court. In that case, an equal protection challenge to a regulation of the Connecticut Welfare Department was raised. The regulation limited medicaid benefits for first trimester abortions to therapeutic or "medically necessary" abortions. The plaintiff complained that the regulation created a classification which impinged upon essentially the same fundamental right in question here, i.e., the right of privacy in its applications to procreative

---

1. 42 U.S.C. § 602(a)(15) requires that state plans for aid and services to needy families with children "provide (A) for the development of a program, for each appropriate . . . individual . . . for preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life, and for implementing such program by assuring that in all appropriate cases (including minors who can be considered to be sexually active) family planning services are offered to them and are provided promptly . . . to all individuals *voluntarily* requesting such services, but acceptance of family planning services provided under the plan *shall be voluntary on the part of such . . . individuals. . . .*" (Emphasis added).

capacities, activities, and decisions. The Court there said that the fundamental right in question was not impinged by the regulatory classification imposed.

The Court's analysis has direct application to this case. In *Maher*, the challenged classification was one which granted benefits to pay pregnancy-related medical expenses of indigent women who chose to carry pregnancy to term and denied such benefits to women who chose rather to abort the pregnancy for non-therapeutic reasons during the first trimester of pregnancy. The two classes created by the regulation were 1) those women who chose to exercise their fundamental privacy right by proceeding to childbirth and 2) those women who chose to exercise the privacy right by aborting during the first trimester. The Court concluded that, although the regulation did make a distinction between different ways of exercising the right, which exercise is normally constitutionally protected against undue government-imposed burdens or prohibitions, the distinction

> may have made childbirth a more attractive alternative, thereby influencing the woman's decision, but it has imposed no restriction on access to abortions that was not already there. The indigency that may make it difficult—and in some cases, perhaps, impossible—for some women to have abortions is neither created nor in any way affected by the Connecticut regulation.

*Maher, supra* 97 S.Ct. at 2383. The Court then holds on the basis of that analysis:

> We conclude that the Connecticut regulation does not impinge upon the fundamental right recognized in *Roe.*

*Id.* at 2383.[2]

This case presents a similar refusal to fund one class's constitutionally protected exercise of the privacy right while funding another class's exercise of that right. This court is cognizant of some differences between the facts of *Maher* and the facts here. In *Maher*, the challenged regulation was state-imposed while here, the regulation is federally imposed and state-imple-

mented. That difference is of no consequence to the application of the Supreme Court's analysis. Another difference is that the classifying factor in *Maher* was not the same kind of classifying factor employed here. In *Maher*, the classifying factor was the mode of exercising the privacy right. In this case, the complaining party seeks to exercise the privacy right in the same way as those in the other class, i.e., by sterilization. The classification factor here is that of age and is employed to approximate the underlying factors of maturity and capacity.

Notwithstanding the fact that a different classification factor is utilized in this case, the result under the Supreme Court analysis in *Maher* is the same, i.e., no impingement upon a fundamental right because the regulation "has imposed no restriction on access to . . . [sterilizations] that was not already there." That is, the regulation "differentiates" but does not "impinge" within the meaning of that term as defined by the Court in *Maher.* The indigency which now affects the plaintiff's exercise of her privacy right is not a product of the regulation imposing the moratorium.

Because there is no impingement of a fundamental right, this court need not treat the difficult problem of elaborating the nature of the fundamental right of privacy of minors. *See Carey v. Population Services,* 431 U.S. 678, 97 S.Ct. 2010, 2018, 52 L.Ed.2d 675 (1977). Nor does the court need to scrutinize strictly the classification factor used to affect a grouping on the basis of capacity to understand and consent to sterilization procedures. Whether the 21-year age requirement is sufficiently congruent with capacity to meet the strict scrutiny standard need not be answered. The court is not required to determine the complications which might result from the fact that, unlike other contraceptive or family planning measures, sterilization results in a permanent "waiver" of the fundamental right

2.  *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

to procreate,[3] *vis-à-vis* the right to decide in a given instance to "bear or beget" children. These are issues of no little consequence which the court does not reach in this decision.

■ As in *Maher*, the absence of a suspect classification and of any impingement upon a fundamental right leads to the application of a rational basis test to the regulation. As earlier stated with respect to the sustaining of this regulation under the applicable statutes, there is a reasonable relationship between the minimum age requirement of 21 and the purpose of preventing involuntary or unconsented sterilizations under the statutory program involved.

Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is denied while the cross-motion for summary judgment of defendants is granted.

3.  *Skinner v. Oklahoma*, 316 U.S. 535, 541–42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).