**Eric HUNTER and Cory Powell, Plaintiffs,**

v.

**Lawton CHILES, Doug Cook, Gary Crayton, and Gilbert Mitchell, Defendants.**

No. 95–6881–CIV.

United States District Court, S.D. Florida.

Oct. 24, 1996.

Juliette Lippman and Ellen Saideman, The Advocacy Center for Persons with Disabilities, Inc., Fort Lauderdale, FL, for plaintiffs.

Chesterfield Smith, Jr., Office of the Attorney General, Tallahassee, FL, for defendant Chiles.

Gordon B. Scott, Agency for Health Care Administration, Tallahassee, FL, for defendants Cook, Crayton and Mitchell.

## FINAL ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon Defendants, Cook, Crayton and Mitchell's, Motion to Dismiss, Defendant Chiles' Motion to Dismiss, Plaintiffs' Motion for Summary Judgment, and Plaintiffs' Motion for Class Certification.

All motions have been fully briefed and are ripe for review. Additionally, there are no material factual disputes that exist in this case, the issues presented are questions of law and the case is ripe for adjudication.

The questions before the Court are whether federal law allows Florida to deny coverage of augmentative communication devices and services (ACDS) as durable medical equipment under its home health service program for its adult Medicaid recipients and whether Florida may deny coverage of ACDS for those under twenty-one (21) because of speculation that other payors may exist. The Court answers both of these in the negative.

## I. FACTS

Plaintiffs Eric Hunter, age 22, and Cory Powell, age 7, are Medicaid recipients with severe speech disabilities. Both are unable to communicate either verbally or with hand gestures. Their treating professionals have determined that the only effective speech therapy for them is Augmentative Communication Devices and Services (ACDS) and that ACDS are therefore necessary for them. Without an ACDS, Plaintiffs are left without any oral speech or equipment for oral speech. Thus, they are predestined to depend on others and denied the opportunity to attain interdependence or self-care.

Plaintiffs, like many people with severe speech disabilities, are dependent on government benefits for access to ACDS which would allow them to communicate verbally. Plaintiff Hunter claims entitlement to an ACDS under Medicaid's Durable Medical Equipment program (DME); Plaintiff Powell claims entitlement under Medicaid's Early and Periodic Screening, Diagnostic and Treatment (EPSDT) program. Defendants have a policy of not covering ACDS under the Florida Medicaid program. Defendants contend that ACDS are not covered for adult Medicaid recipients, and are only covered for those under the age of twenty-one after all other funding sources have been exhausted.[1]

## II. MOTION TO DISMISS

Defendants argue that this case should be dismissed for three reasons: lack of venue, failure to state a claim and sovereign immunity.

### A. Venue

This case can be brought in a judicial district where any defendant resides, if all defendants reside in the same State. 28 U.S.C. § 1391(b). Venue lies in the Southern District of Florida because all Defendants reside in Florida, Defendant Mitchell resides in the Southern District and the cause of action arose within the Southern District as to Plaintiff Hunter. *Id.* Thus, the motion to dismiss for lack of venue shall be denied.

### B. Failure To State A Claim

■ When considering a motion to dismiss brought pursuant to 12(b)(6), a court must first accept all of the plaintiff's allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Thomas v. Burlington Industries, Inc.*, 769 F.Supp. 368, 370 (S.D.Fla.1991). Consideration of matters beyond the four corners of the Complaint is improper. *Milburn v. United States*, 734 F.2d 762 (11th Cir.1984); *Thomas*, 769 F.Supp. at 370. A court should not grant a motion to dismiss unless the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

---

1. All parties agree that for the plaintiffs to establish an entitlement to ACDS under Medicaid, the plaintiffs must show: (1) they are eligible; (2) ACDS are covered; and (3) ACDS are medically necessary. It is undisputed that the Plaintiff's are eligible for Medicaid. The disputed issue is whether the ACDS are a covered service under the Florida Medicaid statute. Defendants neither concede nor deny that ACDS are medically necessary.

The Court finds that the complaint clearly states causes of action against Defendants Cook, Crayton, and Mitchell. Thus, Defendants, Cook, Crayton, and Mitchell's, motion to dismiss pursuant to 12(b)(6) shall be denied.

■ Regarding Defendant Chiles, however, the Court finds that the Complaint fails to charge Defendant Chiles with the violation of any law or duty. Although the Complaint charges the "action of defendants" in paragraphs 45, 46, 49 and 52 is in violation of various federal statutes, it fails to allege precisely anything connecting Defendant, Governor Lawton Chiles to such obligational violations. The complaint merely alleges that "Governor Chiles has the responsibility to ensure that the agencies of the Executive Department of the State, including AHCA, act in full compliance with the Constitution and laws of the United States." Furthermore, it is not alleged that Defendant Chiles is factually or legally responsible for any program or activity that receives such funds or that he is responsible for AHCA's compliance with federal law or that he has any connection with or control over such program or activity. The Court finds that Plaintiffs have failed to state a claim which, if proven, would result in liability on the part of Defendant Chiles. Thus, Defendant Chiles' Motion to Dismiss shall be granted.

## C. SOVEREIGN IMMUNITY

■ Defendants assert immunity based on *Seminole Tribe of Florida v. Florida,* 517 U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and argue that the Eleventh Amendment applies and therefore, the Court lacks subject matter jurisdiction over the Plaintiff's claims. The *Seminole* Court held that although Congress did intend to abrogate the State's sovereign immunity, Congress did not have the power to authorize suits by private parties against unconsenting States under the Indian Commerce Clause. The Supreme Court overruled *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which held that Congress could authorize suits by private parties under the Interstate Commerce Clause.

■ A federal court has jurisdiction in a suit against a state officer, consistent with the Eleventh Amendment, to enjoin state officials to conform their future conduct to the requirements of federal law. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although private individuals may not directly sue a state to enforce a provision of federal Medicaid law, they may sue state officials to obtain the same prospective relief. Such suits are not considered suits against the state itself and thus, are not barred by the Eleventh Amendment. *Id.*

In *Seminole,* the Supreme Court expressly acknowledges and affirms legal principles under which individuals have brought suits against state officials to enforce Federal Medicaid law. *Seminole,* at —— – ——, and nn. 14, 16–17, 116 S.Ct. at 1131–32 and nn. 14, 16–17. Thus, the relevant law in this area is unchanged. In fact, the Court reaffirmed Congress does have the power to abrogate Eleventh Amendment immunity when legislating under the Fourteenth Amendment. *Id.* at ——, 116 S.Ct. at 1125.

Plaintiffs' claims were brought under the federal Medicaid law, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.,* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Defendants admit *Seminole* does not apply to claims brought under the Fourteenth Amendment. However, Defendants erroneously contend that Plaintiffs claims were not brought pursuant to the Fourteenth Amendment and that sovereign immunity has not been abrogated for the claims.

■ Congress explicitly abrogated the Eleventh Amendment in adopting the Americans with Disabilities Act. 42 U.S.C. § 12101(b)(4). The Rehabilitation Act Amendments of 1986 specifically overrode the Eleventh Amendment for both the Rehabilitation Act and all other claims of discrimination, including claims of Medicaid Act discrimination. 42 U.S.C. § 2000d–7(a)(1). The Court finds that Plaintiffs' claims are authorized by the Fourteenth Amendment. Further, the Medicaid Act is authorized pursuant to the Spending Clause of the Constitution of

the United States. The federal government can attach conditions to federal funds so as to require States to honor the obligations assumed as a condition of receiving the federal funds. *Metrolina Family Practice Group, P.A. v. Sullivan,* 767 F.Supp. 1314 (W.D.N.C. 1989), *aff'd,* 929 F.2d 693 (4th Cir.1991) (finding that Congressional control of federal funds is a valid exercise of the power of Congress under the Spending Clause). Therefore, Congress has both the power to authorize the § 1983 Medicaid Act claims and has abrogated the state's immunity from these claims.

The Court finds that the decision in *Seminole* does not affect the law governing whether individuals may bring suits to enforce the coverage of ACDS under Florida's Medicaid program. Under the doctrine of *Ex parte Young* the case is not foreclosed by the Eleventh Amendment because relief is limited to prospective injunctive relief. The holding in *Seminole* does not apply because Plaintiff's claims are authorized pursuant to the Fourteenth Amendment and immunity has been abrogated. Therefore, the Defendants' Motion to Dismiss for sovereign immunity shall be denied.

## III. MOTION FOR SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2553–54.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1361.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510.

## IV. THE MEDICAID STATUTE

The purpose of the Federal Medicaid Act is to enable each State "to furnish.... rehabilitation and other services to help such families and individuals attain or retain capacity for independence or self-care ..." 42 U.S.C. § 1396(2) (1992). Augmentative communication devices have been found to "fall within the general purpose of the Medicaid

statute." *Fred C. v. Texas Health and Human Serv. Comm'n,* 924 F.Supp. 788, 789–90 (W.D.Tex.). Florida chose to participate in Medicaid, 42 U.S.C. §§ 1396–1396v, a joint state-federal funding program for the needy. "Although participation in the Medicaid program is entirely optional, once a state elects to participate, it must comply with the requirements of Title XIX." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980).

Federal law does not require states participating in the Medicaid program to provide all services and devices which come within the general purpose of the statute. Rather, Congress requires a state Medicaid program to provide, at a minimum, "at least the case and services listed in paragraphs (1) through (5), (17) and (21) of section d(a) of this title." 42 U.S.C. § 1396a(a)(10)(A) (Supp.1996).

States may decide to provide any of the optional medical services listed in Title XIX of the Social Security Act. 42 U.S.C. § 1396d (Supp.1996). Home health care is an optional service. *Id.* Florida has elected to cover Home Health Care Services and Early and Periodic Screening, Diagnosis, and Treatment Services, both of which include durable medical equipment, as Mandatory Medical Services. Fla.Stat. § 409.905(4), (2) (1996).

■ Regarding Plaintiff Hunter, the issue is whether augmentative communication devices fall within the optional service of home health care listed in Title XIX which Florida has elected to cover under its Medicaid program. Once a state chooses to cover one of the optional services which could possibly provide Medicaid funding for augmentative communication devices, that state is required to provide ACDS. *Meyers v. Reagan,* 776 F.2d 241, 244 (8th Cir.1985). The Medicaid Statute in *Meyers* included "physical therapy and related services" among the optional services. *Id.* at 243. "Related Services" is defined by Federal regulations to include services for individuals with speech, hearing, and language disorders. Although the state of Iowa provided for coverage of physical therapy, it excluded ACDS. Iowa contended it had broad discretion in determining the extent of medical services it offered and

could exclude ACDS from coverage. *Id.* at 243–44. The Court disagreed and found that "[O]nce Iowa chose to offer "physical therapy and related services," it bound itself to act in compliance with Title XIX of the Social Security Act and the applicable regulations in the implementation of those services.... Thus, Iowa cannot arbitrarily exclude electronic speech devices from coverage under its Medicaid program." *Id.*

Although Florida Medicaid has not elected to provide "physical therapy and related services," it does provide the optional service of home health care. Fla.Stat. 409.905(4) (1996).

## V. HOME HEALTH CARE AND DURABLE MEDICAL EQUIPMENT

The Federal Medicaid statute specifically includes "home health care" among the optional services, and federal regulations define "home health care" to include "durable medical equipment." 42 U.S.C. § 1396d(a)(xi)(7) (Supp.1996); 42 C.F.R. § 440.70(b)(3) (1995).

■ Plaintiff Hunter claims entitlement to ACDS as durable medical equipment (DME) and argues that ACDS are required to be covered under the Durable Medical Equipment (DME) program. Defendants do not deny that ACDS meet the generic characteristic of durable medical equipment nor do defendants deny that ACDS are considered durable medical equipment for those twenty-one years and younger. In fact, Defendants contend that the Florida Medicaid program "does not cover augmentative communication devices as durable medical equipment for adults" and "does not cover augmentative communication devices for Medicaid recipients under 21 years of age because those devices are available" through other sources. Welch Aff. at 2. The defendants thus contend they would pay for an ACDS for those younger than twenty-one if they were the payor of last resort but would never provide an ACDS to those twenty-one years one day and older. The Defendants contend that they "have the discretion to choose what optional services will be covered, and whether those services will apply to both adults

and those under the age of twenty-one (21)." Defs. MD Mem. at 7. The Court disagrees.

■ Medicaid funding cannot be denied on the basis of age. *Salgado v. Kirschner,* 878 P.2d 659, 660 (Ariz.1994) (en banc), cert. denied, —— U.S. ——, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995). In *Salgado,* a Arizona Medicaid program participant was denied lifesustaining liver transplant coverage because she was over twenty-one. *Id.* at 660. The state, like the defendants in the instant case, argued it could choose to provide transplants to children and not to adults because the federal Medicaid statute allowed EPSDT services for those under twenty-one. *Id.* at 662. The Court disagreed and found it unreasonable to allocate treatment within a service category solely on the basis of age. This Court finds that Florida Medicaid's selection of age as the sole criterion for denying benefits is wholly unrelated to the medical decision at hand and cannot meet the fundamental legal concept of reasonableness. *See Fred C,* at 791–92.

Federal Courts have also held that a denial of Medicaid benefits based upon age must satisfy the rational basis test. *Peck v. Califano,* 454 F.Supp. 484, 488 (D.Utah 1977). Additionally, state Medicaid decisions as to coverage "must have a rational basis for the distinctions they draw." *Curtis v. Taylor,* 625 F.2d 645, 650 (5th Cir.1980); *Fred C,* at 791–92.

The regulations accompanying the Medicaid statute state that each covered service "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b) (1995). The general purpose here is "to furnish ... rehabilitation and other services to help.... attain or retain capacity for independence or self-care ..." 42 U.S.C. § 1396(2) (1992). The specific purpose is "to augment verbal communication through the program's home health care/durable medical equipment service." *Fred C,* 924 F.Supp. at 791–92; *See* 42 U.S.C. § 1396d(a)(xi)(7) (Supp.1996). The ability to speak and communicate is vital and ACDS have enabled Medicaid recipients with severe speech disabilities "to live on their own, maintain employment, pay taxes, and become productive members of the community" rather than wards of the state. This limits the cost of other disability and other welfare benefits. *Fred C,* at 791–92 (citing Helping the Mute to Speak, 17 N.Y.U. REV. L. & SOC. CHANGE 741 (1989/1990)). This Court concludes that there is not a rational basis to provide speech to one who is twenty years three hundred sixty-four days and deny the same to one who is two days older. *Fred C,* at 791–92.

The Court finds that Florida made the voluntary choice to provide optional home health care, including durable medical equipment, to the Plaintiffs. The Court concludes that the ACDS is durable medical equipment and covered as a Florida Medicaid benefit under the home health care provision.

## VI. EARLY AND PERIODIC SCREENING, DIAGNOSIS AND TREATMENT

■ Plaintiff Powell claims entitlement to ACDS under Medicaid's Early and Periodic Screening, Diagnostic and Treatment (EPSDT) program and argues that ACDS are covered under the Early and Periodic Screening, Diagnosis and Treatment program (EPSDT) as speechtherapy, DME, prosthetics and rehabilitation services.

Defendants do not dispute that ACDS are covered by EPSDT for children if found to be medically necessary for that child. Cook's SJ Mem. at 3. Defendants' only defense to their policy of excluding ACDS from Medicaid coverage is their argument that Medicaid is the "payor of last resort." *Id.* at 791–92. The Defendant speculates that ACDS are available through Children's Medical Services, the Departmental Services Program, and various school districts.

The Court finds Defendants statements to be self-serving and conclusory. Plaintiffs have provided substantial evidence that other funding has not been made available to Plaintiffs. Plaintiff Powell has repeatedly tried to obtain ACDS from many sources without success. Similarly, Plaintiff Hunter has tried without success for more than six years to get Medicaid and other agencies to provide ACDS.

The Court determines that the Plaintiffs do not have private funds such as private insurance available to them and that the government sources submitted by Defendants are not required by law to provide ACDS to Medicaid recipients such as Plaintiffs. Developmental Services has extensive waiting lists for services. The Florida Developmental Disabilities Council does not provide direct services and has advised the Court that it will not provide ACDS to Medicaid recipients generally and in specific to Plaintiffs. Both Children's Medical Services (CMS) and Department of Labor and Employment Security Division of Vocational Rehabilitation (DVR) require that the clients first avail themselves of other resources before becoming eligible for services through their programs. *See* Fla.Admin.Codes § j–2.006 ("every possible alternative financial resource will be investigated" by CMS staff); 29 U.S.C. § 721(a)(12)(A) (for eligibility of DVR services DVR must show that "comparable services and benefits are not available under any other such program" and that "maximum utilization shall be made of public or … other appropriate resources"). CMS specifically lists Medicaid as an alternative financial resource to be used prior to CMS funds. Fla.Admin.Code § 10J–2.006. DVR is allowed to subrogate Medicaid for medically necessary items. F.S. 413.445 (1993). Furthermore, DVR's principal mission is to promote employment for individuals with disabilities, not to meet the medical needs of young children who do not meet the minimum age for engaging in most work activities. The Court finds that DVR, CMS, and Medicaid could all argue that they are the payor of last resort with the result that no agency agrees to pay for the device.

Defendants may not relieve itself of its obligation to provide ACDS under EPSDT by pointing to local school districts and their responsibilities to provide special education services. The Medicaid statute clearly states that the availability of special education funds cannot be used to deny medically necessary services under Medicaid. 42 U.S.C.

**2.** That provision states: "If the probable existence of third party liability cannot be established or third party benefits are not available to pay the recipient's medical expenses at the time

§ 1396b(c). Nothing in the Social Security Act

shall be construed as prohibiting or restricting, or authorizing the Secretary to prohibit or restrict, payment under subsection (a) for medical assistance for covered services furnished to a child with a disability because such services are included in the child's individualized education program established pursuant to part B of the Individuals with Disabilities Education Act or furnished to an infant or toddler with a disability because such services are included in the child's individualized family service plan adopted pursuant to part H of the Act.

42 U.S.C. § 1396b(c) (Supp.1996).

Medicaid regulations provide that Medicaid must pay if probable liability of a third party is not established or benefits are not available at the time the claim is filed. 42 CFR § 433.139(c).[2] The Court finds that Defendants have not established the probable liability of a third party or the existence of available benefits. The Defendants are obligated to provide ACDS to the Plaintiffs and cannot deny coverage because of speculation that other payers may exist.

## VII. MEDICALLY NECESSARY

Once services are covered, the next issue is whether the covered service is medically necessary. The federal Medicaid regulations authorize states to apply a "medical necessity" standard to requests for covered services. 42 C.F.R. § 440.230(d). *See Beal v. Doe,* 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). Florida Medicaid utilizes the following definition of medical necessity:

"Medically necessary" or "medical necessity" means that the medical or allied care, goods, or services furnished or ordered must:

(a) meet the following conditions:

the claim is filed, the agency must pay the full amount allowed under the agency's payment schedule." 42 CFR § 433.139(c).

(1) be necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain;

(2) Be individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the patient's needs;

(3) Be consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational;

(4) Be reflective of the level of service that can be safely furnished, and for which no equally effective and more conservative or less costly treatment is available statewide; and

(5) Be furnished in a manner not primarily intended for the convenience of the recipient, the recipient's caretaker, or the provider.

F.A.C. § 59G–1.010(167).

The Court finds that the Plaintiffs satisfy this definition. The Plaintiffs have severe speech disabilities and have been evaluated by certified speech-language pathologists. These experts determined that the only speech-language pathology treatment methodology that will allow the Plaintiffs to have effective expressive communication is the use of ACDS. Phipps Aff. at 5; Ronczkowski Aff. at 4. The determinations were based, in part, on the lack of success prior speech language pathology services have had in allowing the plaintiffs to produce speech organically. The experts state that ACDS treatment is appropriate only when other forms of treatment will not allow a patient to naturally produce speech.

"The determination of medical necessity must rest with the individual recipient's physician and not with clerical personnel or governmental officials." *Pinneke v. Preisser*, 623 F.2d 546, 550 (8th Cir.1980). The experts who evaluated Plaintiffs found that ACDS will prevent significant disability or alleviate severe pain; is consistent with generally accepted professional medical standards as determined by Medicaid; is reflective of the level or service that can be safely furnished, and there is no equally effective and more conservative or less costly treatment available; and is furnished in a manner

not primarily intended for convenience. The Plaintiffs treating professionals have determined that the only effective speech therapy for them is Augmentative Communication Devices and Services (ACDS) and that ACDS are therefore necessary for them. Phipps Aff. at 2; Ronczkowski Aff. at 2. Based on the foregoing the Court finds that ACDS is medically necessary.

The Court holds that the augmentative communication device is medically necessary and is a covered benefit for both adults and children. ACDS are durable medical equipment and covered as a Florida Medicaid benefit for adults under the home health care provision. For children, ACDS are covered by the early and periodic screening, diagnosis and treatment program. The Court concludes that Defendants are obligated to provide ACDS to children and adults and cannot deny coverage to anyone because of speculation that other payors may exist. Thus, Plaintiffs' Motion for Summary Judgment shall be granted.

Having reviewed the motions and the record, and being otherwise duly advised, it is hereby:

ORDERED AND ADJUDGED that Defendants, Cook, Crayton and Mitchell's, Motion for Leave to Amend Motion to Dismiss, filed May 6, 1996, is **GRANTED**. It is further hereby:

ORDERED AND ADJUDGED that Defendants, Cook, Crayton and Mitchell's, Motion to Dismiss, filed October 10, 1995, is **DENIED**. It is further hereby:

ORDERED AND ADJUDGED that Defendants, Cook, Crayton and Mitchell's, Amended Motion to Dismiss, filed May 6, 1996, is **DENIED**. It is further hereby:

ORDERED AND ADJUDGED that Defendant Chiles' Motion to Dismiss, filed October 23, 1995, is **GRANTED**. It is further hereby:

ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification, filed October 31, 1995, is **DENIED**. It is further hereby:

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment, filed October 31, 1995, is GRANTED.

Plaintiffs are hereby DIRECTED to file a proposed form of Final Judgment for entry herein within twenty (20) days from the date of this order.

DONE AND ORDERED.