FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.

878 P.2d 659

Elizabeth SALGADO; Pima County Arizona, a body politic, Plaintiffs/Appellants,

v.

Leonard J. KIRSCHNER, in his capacity as Director of Arizona Health Care Cost Containment System; The State of Arizona; and University Famli–Care, Defendants/Appellees.

No. CV–92–0087–PR.

Supreme Court of Arizona, En Banc.

July 28, 1994.

Reconsideration Denied Sept. 20, 1994.

---

302

Howard Baldwin, Tucson, for Salgado and Pima County.

Johnston Maynard Grant & Parker by Logan T. Johnston and Michael D. Curran, Phoenix, for Kirschner and the State.

Snell & Wilmer by Dora Thomas–Fitzpatrick, Phoenix, Laura V. Ridenour and Kathleen B. Corey, Tucson, for University Famli–Care.

## OPINION

MARTONE, Justice.

The question before us is whether federal law allows Arizona to deny life-sustaining transplant coverage to an otherwise eligible Medicaid recipient solely because she is over 21 years of age. We hold that it does not.

## I. BACKGROUND

Arizona chose to participate in Medicaid, 42 U.S.C. §§ 1396–1396v, a joint state-federal funding program for medical care for the needy. "Although participation in the Medicaid program is entirely optional, once a state elects to participate, it must comply with the requirements of Title XIX." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). Arizona's program is called the Arizona Health Care Cost Containment System (AHCCCS), A.R.S. §§ 36–2901 to –2975.

Elizabeth Salgado (Salgado), an eligible member of AHCCCS, suffered from primary biliary cirrhosis (PBC), a fatal liver disease affecting mostly middle-aged women. Arising from an altered immunity in the patient, PBC destroys the bile ducts in the liver until it ultimately causes cirrhosis. Because it is idiopathic, there is no connection between PBC and lifestyle abuses like alcohol consumption. Its victims, therefore, have no ability to control its onset and rapid progression. At this time, the only effective medical treatment is liver transplantation.

Salgado was first diagnosed with PBC in 1986 when she was 41 years old. In January 1988, her physicians concluded that a liver transplant was her only hope for survival. She applied for coverage through AHCCCS. As she waited for approval, her condition rapidly deteriorated. AHCCCS did not respond to her request until the late summer of 1989. Although University Famli–Care, Salgado's AHCCCS provider, initially approved funding on August 1, 1989, it later denied coverage under A.R.S. § 36–2907(A)(12), which limited coverage for liver transplants to persons under 18.[1]

Because her life was at stake, Salgado, her family, and her physician petitioned the Pima County Board of Supervisors for help. In the meantime, she challenged AHCCCS' denial and exhausted her administrative remedies. Happily for her, Pima County granted her request and funded the transplant.[2] Salgado and Pima County then filed an action in the superior court against the director of AHCCCS, the state, and University Famli–Care, seeking review of administrative agency denial, declaratory relief and special action relief. The trial court granted the defendants' motion to dismiss. Salgado and Pima County appealed to the court of appeals, arguing that the statutory age classification violated the federal Medicaid statute and the equal protection clauses of the United States and Arizona Constitutions. The court of appeals affirmed. *Salgado v. Kirschner*, 172 Ariz. 285, 836 P.2d 995 (App. 1992).

We first granted review to consider the federal and state equal protection claims. But subsequent developments in Medicaid law in the United States Court of Appeals caused us to later grant review of Salgado's and Pima County's statutory claim as well. The issues are of critical statewide importance. Rule 23(c)(4), Ariz.R.Civ.App.P.

## II. ANALYSIS

We first address the statutory question so that we may avoid the resolution of constitutional issues if we can. *Harris*, 448 U.S. at 306–307, 100 S.Ct. at 2683.

The federal Medicaid statute is long on detail, but short on answers to fundamental questions. For example, as the court of appeals properly noted, *Salgado*, 172 Ariz. at 286, 836 P.2d at 996, it remains uncertain to

---

1. Now 21. Section 36–2907(A)(12) was amended and renumbered § 36–2907(A)(11) in 1991, and provides:

 A. ... [T]he following health and medical services shall be provided pursuant to provider contracts under this article:

 11. Medically necessary kidney, cornea and bone transplants and immunosuppressant medications for these transplants ordered on prescription by a physician ... and in addition other medically necessary transplants and immunosuppressant medications for these transplants ordered ... by a physician ... and

allowed as an early and periodic health screening and diagnosis and treatment service for eligible persons under the age of twenty-one....

2. Pima County has since funded liver transplants for two other women. Chris Limberis, *Supervisors Agree to Pay for Second Liver Transplant*, Ariz. Daily Star, Apr. 21, 1993 at 3B. Had AHCCCS covered them, the federal government would have paid for the greater part of the expense.

this day whether Medicaid requires the funding of medically necessary treatment. A state plan for medical assistance must, at a minimum, include "at least the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a) of this title." 42 U.S.C. § 1396a(a)(10)(A). These are, generally speaking, (1) in-patient hospital services, (2) out-patient hospital services, (3) laboratory and x-ray services, (4) nursing facility services, early and periodic screening, diagnostic, and treatment services (EPSDT) and family planning services, (5) physicians' services, (6) midwife services, and (7) nurse practitioner services. 42 U.S.C. § 1396d(a)(xi)(1)–(5), (17) and (21).

If these broad categories of services were tied to medical necessity, then Salgado would be entitled to a liver transplant. But the statute fails to provide any substantive content to the specific care to which a recipient is entitled within each of the broad categories. The Supreme Court discussed this problem in *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). It stated that "[a]lthough Title XIX does not require States to provide funding for all medical treatment falling within the five [now seven] general categories, it does require that state Medicaid plans establish 'reasonable standards ... for determining ... the extent of medical assistance under the plan which ... are consistent with the objectives of [Title XIX].'" *Id.* at 441, 97 S.Ct. at 2369 (quoting 42 U.S.C. § 1396a(a)(17)). Relying upon 42 U.S.C. § 1396, the Court characterized the objective as enabling each state, as far as practicable, to furnish medical assistance to meet the cost of necessary medical services. *Id.* at 444, 97 S.Ct. at 2371. The Court then seemed to suggest that a serious statutory question might arise if a state Medicaid plan excluded necessary medical treatment from its coverage. *Id.* But in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), the Court suggested a possible contrary view. It upheld a 14–day limitation on in-patient coverage even if a patient needed to stay longer because "Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs." *Id.* at 303, 105 S.Ct. at 721. The

Court said that the Medicaid Act gives "the states substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" *Id.* (quoting 42 U.S.C. § 1396a(a)(19)).

We need not decide whether the broad service categories include all medically necessary treatment because Arizona has chosen to fund organ transplants. We therefore do not have to decide whether Arizona must fund organ transplants but only whether the line it has drawn is consistent with the federal Medicaid statute.

Salgado and Pima County rely upon 42 U.S.C. § 1396b(i), which provides in relevant part that federal payment to the states shall not be made

(1) for organ transplant procedures unless the State plan provides for written standards respecting the coverage of such procedures and unless such standards provide that—

(A) similarly situated individuals are treated alike; ...

Salgado argues that dividing eligible recipients into age categories fails to comply with the "similarly situated" statutory language.

In contrast, AHCCCS argues that the federal Medicaid statute itself allows states to provide greater care to children than to adults. AHCCCS argues that A.R.S. § 36–2907(A)(11) specifically ties liver transplant coverage to federal early and periodic health screening diagnostic and treatment services (EPSDT) defined by 42 U.S.C. § 1396d(r).

Recall that EPSDT services under § 1396d(r) are among the seven mandatory service categories that must be within each state plan under 42 U.S.C. § 1396a(a)(10)(A). An examination of 42 U.S.C. § 1396d(r) reveals that EPSDT services are, for the most part, well-baby-care services, with the following catchall:

(5) such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and condi-

tions discovered by the screening services, whether or not such services are covered under the State plan.

AHCCCS argues that the state may choose, therefore, to provide transplants to children and not to adults under this catchall.

We first examine the statute and then the federal cases construing them. We think that AHCCCS' argument is foreclosed by the specific language of the catchall. The catchall includes "measures described in subsection (a) of this section ... whether or not such services are covered under the State plan." But "subsection (a) of this section" refers to § 1396d(a), which includes a list of 24 specific service categories, only seven of which are required to be in each state plan. Thus we read the catchall as simply requiring services for children in the non-mandatory categories under subsection (a). These include, for example, home health care, § 1396d(a)(xi)(7), dental services, § 1396d(a)(xi)(10), and physical therapy, § 1396d(a)(xi)(11). But nowhere is reference made to organ transplants. Recall again that § 1396d(a) describes categories of services, not their substantive content. We do not believe the language of § 1396d(r)(5) ("necessary health care") defines the substantive content of service categories under § 1396d(a) with any greater specificity than does § 1396 ("necessary medical services"), which the Supreme Court has held "does not require States to provide funding for all medical treatment falling within the five [now seven] general categories." *Beal,* 432 U.S. at 441, 97 S.Ct. at 2369. We thus do not read § 1396d(r)(5), the catchall, as either requiring a state to provide organ transplants or authorizing a state to provide organ transplants to children but not to adults.

In contrast, § 1396b(i) specifically addresses organ transplants, and therefore controls this case. There is controversy among the circuits of the United States Court of Appeals over the meaning of § 1396b(i). The United States Court of Appeals for the Eighth and Ninth Circuits have held that § 1396b(i) is not just a condition on the receipt of federal funds for organ transplants, but is, rather, authorization for the states to decide for themselves whether they want to

cover organ transplants even if otherwise medically necessary. *Ellis v. Patterson,* 859 F.2d 52, 55 (8th Cir.1988). *Dexter v. Kirschner,* 972 F.2d 1113, 1117 (9th Cir.1992). They conclude that, while a state need not cover any organ transplant, if one chooses to do so, it may not arbitrarily or unreasonably deny services to an otherwise eligible Medicaid recipient. *Ellis,* 859 F.2d at 56; *Dexter,* 972 F.2d at 1118; *Meusberger v. Palmer,* 900 F.2d 1280, 1282 (8th Cir.1990). In addition, the United States Court of Appeals for the Ninth Circuit has defined "similarly situated" within the meaning of § 1396b(i) as

All patients who can be treated effectively by the same organ transplant procedure. *Dexter,* 972 F.2d at 1120.

In contrast, the United States Court of Appeals for the Fourth and Eleventh Circuits have held that 42 U.S.C. § 1396b(i) does not confer upon the states unqualified discretion as to whether to fund organ transplants. They read § 1396b(i) as a precondition to the payment of the federal share of a transplant, and look to other parts of the Medicaid statute to decide questions of coverage. *Pereira v. Kozlowski,* 996 F.2d 723, 725 (4th Cir.1993); *Pittman v. Secretary,* 998 F.2d 887, 891 (11th Cir.1993). In *Pereira,* the state conceded, and the court therefore assumed for purposes of the opinion, that the EPSDT catchall of § 1396d(r)(5) required the state to fund a heart transplant for a child.

In *Pittman,* the Eleventh Circuit joined the Fourth Circuit in concluding that § 1396b(i) is just a payment provision but then went well beyond the Fourth Circuit and actually held that the catchall language to § 1396d(r)(5) required the states to cover transplants for children even though, as we have seen above, the catchall merely makes the non-mandatory service categories of § 1396d(a) applicable to children. But these are categories of services, which do not define the substantive content of care within each service group. We thus specifically reject *Pittman*'s reading of § 1396d(r)(5).

We need not resolve the conflict over whether § 1396b(i) is a payment provision or gives the states authority to decide if they want to cover transplants, because Arizona has decided that it will cover transplants. It

is axiomatic that Arizona would not cover transplants if the federal share would not be paid under § 1396b(i).[3] But the federal share will only be paid if Arizona's plan provides that similarly situated individuals are treated alike, and if the plan is otherwise reasonable.

### A. Similarly Situated

 We agree with the Ninth Circuit that "similarly situated" means "all patients who can be treated effectively by the same organ transplant procedure." *Dexter,* 972 F.2d at 1120. Salgado is within the class of all patients who can be treated effectively by a liver transplant. Thus, to the extent that A.R.S. § 36–2907(A)(11) excludes persons from coverage solely because they are over 21, it is in violation of 42 U.S.C. § 1396b(i). And, as we have already indicated, *ante,* at 303, 878 P.2d at 661, although a state may choose not to participate in Medicaid, once it does so, it must comply with federal Medicaid statutes.

We believe that, to the extent A.R.S. § 36–2907(A)(11) attempts to limit organ transplants to persons eligible for the EPSDT program under 42 U.S.C. § 1396d(r), it misperceives the nature of § 1396d(r)(5). As we have stated, 42 U.S.C. § 1396d(r)(5) does not define the substantive scope of medically necessary procedures, but by its own terms makes the service categories listed in § 1396d(a) that are optional under § 1396a(a)(10) mandatory for children. While in-patient hospital services and physician services are mandatory under every state plan, § 1396d(r)(5) simply extends the non-optional, and therefore possibly not elected service categories, to children. So, for example, a state may choose not to provide home health care services to adults, because § 1396d(a)(xi)(7) is not a mandatory service category under § 1396a(a)(10). But if, as a result of the EPSDT program, a child requires home health care services, he or she

would be covered under § 1396d(r)(5). The catchall thus expands service categories for children, but says no more about their substantive content than does the Medicaid statute in general.

### B. Reasonableness

 AHCCCS argues that excluding persons from coverage solely because they are over 21 is reasonable because the federal Medicaid statute itself makes categories of services mandatory for children that are optional for adults. But the special treatment § 1396d(r) accords to persons under 21 are for services directly related to their status as young persons: basically well-baby and adolescent care. It includes such things as immunizations, periodic dental checkups, eye glasses, child health maintenance, and early diagnosis.

It is reasonable to expand service categories for age-appropriate care to young persons. But it is unreasonable to allocate treatment within a service category solely on the basis of age. Congress specifically recognized that medically relevant factors, and not solely age, should determine coverage for liver transplants. It acknowledged that there is "no scientific basis for limiting liver transplants to children under 18 years of age," and that "liver transplantation is no longer an experimental procedure for individuals over 18." Comprehensive Omnibus Budget Reconciliation Act, Pub.L. No. 99–272, § 9217, 100 Stat. 82, 180–81 (1987).

This is not to say that the state may not use age, if it is medically relevant, as one of the factors in drawing distinctions with respect to medical care. With respect to certain treatment, age may well be one of the factors that is medically relevant. But § 36–2907(A)(11) makes age the only factor. As noted in *Dexter,* 972 F.2d at 1118, once a state adopts a policy to cover a category of organ transplants, it may not arbitrarily or unreasonably deny services to an otherwise eligible Medicaid recipient. In terms of life

---

**3.** *See* A.R.S. § 36–2919 (AHCCCS administration and its contractors shall not provide services or be liable for the cost of services provided "if federal monies are unavailable."). *See also* A.R.S. § 36–2958 (same provision in AHCCCS' Long–Term Care System).

During an organ transplant committee meeting, the Director of AHCCCS stated that the program's goal "is to have as many of the AHCCCS members covered by federal programs as possible, so that the cost is shared." Minutes of the Joint Legislative Study Comm. on Transplants, Jan. 13, 1989, at 4.

expectancy, no medical evidence has been shown to link youth with a greater response to liver transplant. David H. Van Thiel, *Liver Transplantation in Adults, An Analysis of Costs and Benefits at the University of Pittsburgh*, 90 Gastroenterology 213 (1986). What has been shown is that other factors, especially the underlying disease, correlate more specifically with survival rates after transplantation. Criteria for Medicare Coverage of Adult Liver Transplants, 55 Fed. Reg. 8545, 8546 (1990).

Thus it is medically irrational to make every person under 21 eligible for a transplant no matter what the chance of survival, and make every person over 21 ineligible, no matter what other medical factors affect the patient's candidacy for a transplant. To illustrate the arbitrariness of an exclusion based solely on age, a terminally ill 20 year old whose chances for success are small even with a liver transplant would have coverage, but a robust 21 year old whose chances for success are great with a liver transplant would not have coverage. The selection of age, as the sole criterion, without regard to other medical factors, is wholly unrelated to the medical decision at hand. Therefore § 36–2907(A)(11) fails the reasonableness test under *Dexter*.

## III. CONCLUSION

Having concluded that the age limitation of A.R.S. § 36–2907(A)(11) fails the reasonableness test and the similarly situated test under the federal Medicaid statute, we need not reach Salgado's and Pima County's claims under the equal protection clause of the United States Constitution and the privileges and immunities clause of the Arizona Constitution.

We vacate the opinion of the court of appeals, reverse the judgment of the superior court and remand for entry of judgment in favor of Salgado and Pima County on their claims for relief.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.