**FRED C., Individually and By and Through his next friend, Evelyn Tattini, Plaintiff,**

v.

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Eric M. Bost, Commissioner; Texas Department of Human Services, Burton Raiford, Commissioner; and Texas Department of Health, Patti J. Patterson, M.D., Commissioner,[1] Defendants.**

**Civil Action No. SA–94–CA–1028.**

United States District Court,
W.D. Texas,
San Antonio Division.

Dec. 4, 1997.

---

1. Since the filing of this lawsuit, Eric M. Bost replaced DeAnn Friedholm as Commissioner of the Texas Health and Human Services Commission; Patti J. Patterson, M.D. replaced Dr. David Smith as Commissioner of the Texas Department of Health.

Maureen O'Connell, Garth A. Corbett, Advocacy Inc., Austin, TX, Lewis A. Golinker, Ithaca, NY, for Plaintiff.

James Carlton Todd, Office of Attorney General, Austin, TX, for Defendants.

*AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

BIERY, District Judge.

The Fifth Circuit Court of Appeals remanded this Court's order of May 3, 1996, for the purpose of establishing whether Fred C. is qualified to receive home health services under the Texas Medicaid program. *See Fred C. v. Texas Health & Human Servs. Comm'n*, 117 F.3d 1416, 1997 WL 335781 slip op. at 3 (5th Cir.1997), *vacating*, 924 F.Supp. 788 (W.D.Tex.1996). Plaintiff's counsel had Fred C. evaluated and submitted a plan of care signed by his treating physician and by a registered nurse, along with a home health evaluation performed by a Medicaid-enrolled home health agency. Plaintiff contends, and defendants do not controvert, this evidence shows Fred C. is qualified to receive home health services. Consistent with the Fifth Circuit's order, this Court determines plaintiff has established as a matter of law in the summary judgment record that Fred C. is qualified to receive home health services under Medicaid.

In light of this qualification, Fred C. urges the Court to readopt its previous findings: (1) Fred C. is an eligible Texas Medicaid beneficiary; (2) the augmentative communi-cation device is medically necessary; and (3) the ACD is a covered benefit both as a prosthetic device and as durable medical equipment, and again grant summary judgment in favor of Fred C. Although defendants agree Fred C. is eligible for Medicaid benefits, the device is medically necessary and do not dispute he is qualified to receive home health services, they request this Court to reject its previous findings that the device is a covered benefit and enter summary judgment in their favor.

BACKGROUND

In this Texas case of first impression dealing with the application of the Texas Administrative Code and the federal Medicaid statutes and regulations, the Court has before it motions for summary judgment filed by plaintiff and defendants. Implicit in the defense argument is the proposition that plaintiff would be entitled to relief if only he had been born later. For the reasons stated below, the Court concludes the law and reasonable justice require the granting of plaintiff's motion and supplemental motion for summary judgment.

Plaintiff Fred C., a forty-eight year old resident of a nursing home, challenged defendants' decision to deny him the Medicaid services he requires to treat his inability to speak. Fred C. suffered brain damage from a head injury sustained in 1961 when he was twelve years old, and has been receiving state assistance for thirty-six years. To communicate verbally, he sought an augmentative communication device, or ACD, through Texas Medicaid. His request was denied and suit was filed. Fred C. subsequently moved into a residential care facility and Texas Medicaid was again asked to provide the ACD. Fred C.'s request was denied for a second time. Each side contends the issue should be decided in its favor as a matter of law.[2]

---

**2.** On remand, defendants argue the only proper defendant is Patti J. Patterson, M.D., in her official capacity as Commissioner of the Texas Department of Health. However, it is undisputed the Texas Health and Human Services Commission ("THHSC") has been designated the "single state agency" in-charge of the Texas Medicaid program. THHSC is ultimately responsible for any unlawful denial of Medicaid benefits even though the decision to deny benefits may have been made by a subagency. *See Mitchell v. Johnston*, 701 F.2d 337 (5th Cir.1983); *Montoya v. Johnston*, 654 F.Supp. 511 (W.D.Tex.1987). It is proper, therefore, to retain Eric M. Bost, in his official capacity as Commissioner of THHSC, as a party-defendant. It is also reasonable to retain

## THE NEED FOR SPEECH

Language is the principal skill distinguishing human beings from other animals. The inability to speak can be the single most devastating aspect of any handicap. Augmentative communication devices are on the market today which enable many people with severe speech impairments to communicate verbally. Ellen M. Saideman, *Helping the Mute to Speak: The Availability of Augmentative Communication Devices Under Medicaid,* 17 N.Y.U. REV. L. & SOC. CHANGE 741, 741 (1989/1990) [hereinafter *Helping the Mute to Speak,* 17 N.Y.U. REV. L. & SOC. CHANGE at 741.]. Fred C., like the majority of adults with severe speech disabilities, is dependent on government benefits for access to the modern technology which would allow him to speak. Texas Medicaid refuses to fund the speech communication device for people over the age of twenty-one such as Fred C. Texas Medicaid does fund the speech communication device for those in need under the age of twenty-one. The Court infers that had the device and Medicaid funding assistance been available when Fred C. was first injured in 1961 at age twelve, he would have qualified for the device.

## THE MEDICAID STATUTE AND THE TEXAS MEDICAID PROGRAM

The purpose of the federal Medicaid statute is to enable each state "to furnish (1) medical assistance on behalf of ... disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care ...." 42 U.S.C. § 1396 (1992). Augmentative communication devices thus fall within the general purpose of the Medicaid statute. The federal law, however, does not require all states participating in the Medicaid program to provide all services and devices which come within the gen-

eral purpose of the statute. Rather, Congress has set a basic minimum standard for any state Medicaid program which requires it to provide financial assistance only for certain specified medical treatment. *Id.* at § 1396a(a)(10)(A)(Supp.1997). Inpatient hospital services, outpatient hospital services, laboratory and X-ray services, and nursing services, for example, are included in the mandatory Medicaid provisions. *Id.;* 42 U.S.C. § 1396d(a)(1), (2), (3), (17) (Supp. 1997). Speech related services and augmentative communication devices are not included in these mandatory provisions. *See* 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(1)—(5), (17), (21) (Supp.1997). States may, however, decide to provide any of the optional medical services listed in Title XIX of the Social Security Act. 42 U.S.C. § 1396d(a)(6)-(16), (18), (19), (20), (22)-(25) (Supp.1997). Optional services include home health care, private duty nursing, dental services, physical therapy, and prosthetic devices. *Id.* at § 1396d(a)(7), (8), (10), (11), (12). Here, the issue is whether augmentative communication devices fall within two of the optional services listed in Title XIX—home health care and prosthetic devices—which Texas has elected to cover under its Medicaid program. *See* 25 Tex. Admin. Code §§ 29.301—29.312 (West 1997)(home health care); 40 TEX. ADMIN. CODE § 15.502 (West 1997)(prosthetic devices).

The Eighth Circuit Court of Appeals is the only appellate court which has addressed the issue of augmentative communication devices. In *Meyers v. Reagan,* 776 F.2d 241, 244 (8th Cir.1985), the court reasoned that once a state chooses to cover one of the optional services which could possibly provide Medicaid funding for augmentative communication devices, that state is required to provide ACDs. The Medicaid statute at issue specifically included "physical therapy and related services" among the optional services. *Id.* at 243. Federal regulations defined "related services" to include services for individ-

the Texas Department of Human Services ("TDHS") as a defendant through its commissioner. Although Fred C. is not under its care at present, TDHS is one of the agencies which denied his request for a Dynavox. Moreover, plaintiff argues and defendants do not dispute, in

the event Fred C. has to go back into a nursing facility, the only way he could continue to have the ACD repaired or replaced would be if this Court were to find once again that the device fit the definition of a prosthetic device.

uals with speech, hearing, and language disorders. The State of Iowa elected to provide speech therapy under its Medicaid coverage, but excluded augmentative communication devices from coverage under its Medicaid plan. Iowa Medicaid argued it could properly exercise its broad discretion in determining the extent of medical services available under its Medicaid plan by excluding augmentative communication devices from coverage. *Id.* at 243–44. The Eighth Circuit disagreed:

> Once Iowa chose to offer "physical therapy and related services," it bound itself to act in compliance with Title XIX of the Social Security Act and the applicable regulations in the implementation of those services. The applicable regulation provides that [plaintiff] is entitled to equipment provided by or under the direction of a speech pathologist that is necessary to correct her speech disorder. Thus Iowa cannot arbitrarily exclude electronic speech devices from coverage under its Medicaid program.

*Id.* at 244 (citations and parenthetical omitted). As *Meyers* demonstrates, the federal statute and regulations do not bar states from providing augmentative communication devices under state Medicaid plans and may require a state to do so if it provides an optional service listed in Title XIX of the Social Security Act.

Although Texas Medicaid has not elected to provide "physical therapy and related services," it does provide two other optional services listed in Title XIX: home health care and prosthetic devices. 25 TEX. ADMIN. CODE § 29.301—29.312 (West 1997)(home health care services are covered by Texas Medicaid); 40 TEX. ADMIN. CODE § 15.502 (West 1997)(prosthetic devices are covered by Texas Medicaid). It must be determined whether an augmentative communication de-

vice which provides speech impaired adults with the ability to communicate verbally is a home health care service and/or a prosthetic device within the meaning of the Medicaid provisions.[3]

## HOME HEALTH CARE AND DURABLE MEDICAL EQUIPMENT

■ The Medicaid statute specifically includes "home health care" among the optional services, and the federal regulations define home health care to include durable medical equipment. 42 U.S.C. § 1396d(a)(7) (Supp. 1997); 42 C.F.R. § 440.70(b)(3) (1996); *see also* 25 TEX. ADMIN. CODE § 29.301(b)(1) (1997). The term durable medical equipment has no federal Medicaid definition. Texas Medicaid, however, defines this term as "[m]achinery and/or equipment which meets one or both of the following criteria: (A) the projected term of use is more than one year, or (B) reimbursement is made at a cost of more than $1,000." 25 TEX. ADMIN. CODE § 29.301(b)(13)(1997). Fred C. contends the ACD is equipment which has an indefinite projected term of use and the reimbursement cost exceeds the $1,000 threshold amount. This is especially true, Fred C. argues, because Texas Medicaid considers the augmentative communication device as durable medical equipment under its Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") services plan for children under twenty-one. 42 U.S.C. § 1396d(r) (Supp. 1997) (federal Medicaid EPSDT statute); 25 TEX. ADMIN. CODE § 33.122 (West 1997)(Texas Medicaid EPSDT services plan).

■ Defendants do not deny the ACD meets these definitional requirements of durable medical equipment nor do defendants deny the ACD is considered durable medical equipment for those twenty-one years and

---

**3.** Fred C. must establish: (1) he is a Texas Medicaid recipient; (2) the ACD is medically necessary for him; (3) Fred C. qualifies for home health services; and (4) the ACD he seeks is a covered benefit. It is uncontroverted Fred C. is a Texas Medicaid recipient, the ACD is medically necessary for him, and he qualifies for home health services. The disputed issue is whether the ACD should be a "covered benefit" under the Texas Medicaid plan. In remanding this case,

the Fifth Circuit determined "[t]he record abundantly establishes ... the device ... is provided by Texas Medicaid in its home health services program." Although it appears this constitutes a finding by the appellate court that Fred C. has established the ACD is a covered benefit under Texas Medicaid's home health care services plan, the issue is addressed out of an abundance of caution.

younger. Defendants thus rely exclusively on their discretionary decision to provide an ACD for those younger than twenty-one, but deny the help to those twenty-one years one day and older. Fred C. is forty-eight. The Court has not been apprised by the defense of what happens to the ACD provided to a child when the clock strikes midnight on the child's twenty-first birthday. It is left to the reader's imagination to conjure the possibilities.[4]

The Arizona Supreme Court addressed the issue of whether Medicaid funding can be denied on the basis of age. In *Salgado v. Kirschner*, 179 Ariz. 301, 878 P.2d 659, 660 (1994) (en banc), *cert. denied*, 513 U.S. 1151, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995), a participant in Arizona's Medicaid program challenged the State's decision to deny her life-sustaining liver transplant coverage based solely on the fact she was over twenty-one. *Id.* 878 P.2d at 660. The State argued it could choose to provide transplants to children and not to adults because the federal Medicaid statute allowed EPSDT services for those under twenty-one. *Id.* 878 P.2d at 662. The court rejected this argument and found it unreasonable to allocate treatment within a service category solely on the basis of age:

> To illustrate the arbitrariness of an exclusion based solely on age, a terminally ill 20 year old whose chances for success are small even with a liver transplant would have coverage, but a robust 21 year old whose chances for success are great with a liver transplant would not have coverage.

*Id.* 878 P.2d at 665. This Court holds Texas Medicaid's selection of age as the sole criterion for denying benefits is wholly unrelated to the medical decision at hand and cannot meet the fundamental legal concept of reasonableness.

Moreover, although the Arizona Supreme Court did not address plaintiff's equal protection challenge, at least one federal court has held a denial of Medicaid benefits based upon age must satisfy the rational basis test. *Peck v. Califano*, 454 F.Supp. 484, 488 (D.Utah 1977). Additionally, the Fifth Circuit has determined that state Medicaid decisions as to coverage "must have a rational basis for the distinctions they draw." *Curtis v. Taylor*, 625 F.2d 645, 650 (5th Cir.1980); *see also Hope Medical Group v. Edwards*, 63 F.3d 418, 427 (5th Cir.1995), *cert. denied*, 517 U.S. 1104, 116 S.Ct. 1319, 134 L.Ed.2d 471 (1996)(rejecting attempt by state Medicaid agency to deny benefits when denial based on policy reasons which contradict purpose of Medicaid Act).

Finally, the regulations accompanying the Medicaid statute provide that each covered service "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b) (1995). Here, the general purpose is to help individuals attain the capability for independence and self-care. 42 U.S.C. § 1396 (1992). The specific purpose is to augment verbal communication through the program's home health care/durable medical equipment service. *See id.* at § 1396d(a) & (7) (Supp.1997). Because the ability to speak and communicate is vital, augmentative communication devices have enabled adult Medicaid recipients with severe speech impairments to live on their own, maintain employment, pay taxes and become productive members of the community rather than wards of the State. This limits the cost of other medical services, such as nursing expenses, and reduces or eliminates the costs of disability and other welfare benefits. *Helping the Mute to Speak*, 17 N.Y.U. REV. L. & SOC. CHANGE at 741. This Court cannot divine a rational basis to make available the blessings of speech to one who is twenty years three hundred sixty-four days old and deny the same blessing to one who is two days older. The Court concludes the summary judgment record establishes the ACD is durable medical equipment and covered as a Texas Medicaid benefit. *See Hunter v. Chiles*, 944 F.Supp. 914, 919–20 (S.D.Fla. 1996)(ACD is durable medical equipment covered as Medicaid benefit under home health care services plan).

## PROSTHETIC DEVICE

■ Fred C. also contends an ACD may be considered a prosthetic device, a service

---

4. Since the Court's original order, the State of Texas has communicated to the Court that it would not physically remove the ACD during a recipient's twenty-first birthday party, but would nevertheless not be responsible for maintenance, repair or replacement of the equipment.

which the Medicaid statute lists among its optional benefits. 42 U.S.C. § 1396d(a)(12) (Supp.1997). Unlike durable medical equipment, the term "prosthetic devices" is defined by federal Medicaid regulations. Prosthetic devices are:

> replacement, corrective, or supportive devices prescribed by a physician or other licensed practitioner of the healing arts within the scope of his practice as defined by State law to:
>
> 1. artificially replace a missing portion of the body;
>
> 2. prevent or correct physical deformity or malfunction; or
>
> 3. support a weak or deformed portion of the body.

42 C.F.R. § 440.120(c) (1996). Texas Medicaid has chosen to cover two devices as prosthetic devices under its Medicaid program: tube feeding equipment and hearing aids.

Fred C. contends the ACD, like a hearing aid or feeding tube, meets the requirements of the regulation. Specifically, he argues the device is a replacement, corrective or supportive device prescribed by a physician or other licensed practitioner of the healing arts within the scope of his practice, as defined by state law, to prevent or correct physical deformity or malfunction, to wit: malfunctioning nerves, muscles, and organs controlling the production of speech. *See id.* Defendants argue the ACD is not a prosthetic device because it does not replace missing vocal chords or other speech apparatus. According to defendants, those body parts are not "missing" for Fred C. Moreover, defendants argue, the speech device neither "replaces" nor "corrects" his malfunctioning speech; it merely compensates for the lost use of Fred C.'s voice. Thus, defendants conclude, an augmentative communication device is no more "prosthetic" for Fred C. than would be sign language or writing on paper.

The notion that Medicaid services should be distributed according to the physical location of the disability finds no support in the record. There is no indication a hearing aid is a covered benefit only if the ear is missing. Nor is there evidence the mouth must be somehow replaced before Medicaid will provide a feeding tube. Moreover, a hearing impaired person can read lips or receive communication through sign language. Given the defense concession that a hearing aid used to receive communication is a prosthetic device, logic dictates that an ACD to impart communication is also a prosthetic device.

Further, the Medicaid regulations specifically state that the benefits provided must include services recommended "for maximum reduction of physical or mental disability and restoration of a recipient to his best possible function level." 42 C.F.R. § 440.130(d) (1996). In order for Fred C. to be restored to his best possible function level, it is necessary for him to speak. Texas Medicaid provides individuals with disabilities other than those involving speech, such as hearing, services to restore those recipients to their best functional level. Nevertheless, Fred C. is denied an augmentative communication device. The Court determines the ACD is a prosthetic device which should be provided to Fred C. by the Texas Medicaid program.

Texas has made the voluntary choice to provide the optional home health care (including durable medical equipment) and prosthetic device services to Fred C. The Court holds the augmentative communication device is a covered benefit under these two Texas Medicaid provisions. Defendants cannot arbitrarily exclude these devices from coverage under the Texas Medicaid program. *See Meyers,* 776 F.2d at 244.

## CONCLUSION

The augmentative communication device the State provided Fred C. reportedly cost about six thousand penurious dollars. Mindful of the practical need to reduce medical costs, the Court nevertheless has before it no evidence that Texas Medicaid will now be required to fund untold numbers of ACDs. Nor is this a complex class action involving many plaintiffs. The Court declines the invitation to reach the callous and clearly unequal result of denying one forty-eight year old an augmentative communication device which would routinely be provided were he under the age of twenty-one.

ACCORDINGLY, IT IS ORDERED that the plaintiff's motion and supplemental motion for summary judgment are GRANTED and defendants' motion for summary judgment is DENIED.