Manuel ESTEBAN, Tishunta Walker, Robert Ogden, Carol Warren, Bobby Brown, and Carol Terrillion, on behalf of themselves and all other persons similarly situated and The Advocacy Center for Persons with Disabilities, Inc., Plaintiffs,

v.

Doug COOK, in his official capacity as Director of the Agency for Health Care Administration for the State of Florida, Richard T. Lutz, in his official capacity as Director of Florida Medicaid, Bette Hickey, in her official capacity as Florida Medicaid Administrator, Area IX, Gilbert Mitchell, in his official capacity as Florida Medicaid Administrator, Area X, and Judy Rosenbaum, in her official capacity as Florida Medicaid Administrator, Area XI, Defendants.

No. 97–2830–CIV.

United States District Court, S.D. Florida.

May 20, 1999.

Ellen M. Saideman, Senior Attorney, Advocacy Center for Persons With Disabilities, Inc., Ft. Lauderdale, FL, Peter Nimkoff, Litigation Director, Advocacy Center for Persons With Disabilities, Inc., Tallahassee, FL, for plaintiffs.

Jennifer A. Steward, Senior Attorney, Agency for Health Care Administration, Ft. Lauderdale, FL, Gordon B. Scott, Senior Attorney, Agency for Health Care Admin., Tallahassee, FL, for defendants.

## AMENDED MEMORANDUM OPINION

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Plaintiffs' Motion for Summary Judgment (D.E.# 33), filed February 3 and Defendants' Motion for Summary Judgment (D.E.# 44), filed June 22, 1998.

On September 30, 1998, this Court entered an Order granting Plaintiffs' Motion for Summary Judgment as to certain Plaintiffs and granting Defendants' Motion for Summary Judgement as to certain Plaintiffs. Subsequently, the Court was notified that an intervening change in controlling law had occurred that justified reconsideration of the Order. *Ramos · v. Boehringer Manheim Corp.*, 896 F.Supp. 1213, 1214 (S.D.Fla.1994). On September 4, 1998, the Health Care Financing Administration (HCFA), to which the Secretary of Health and Human Services has delegated primary responsibility for administration of the Medicaid program (*see* 42 Fed.Reg. 57,351, 57,352 (1977)), sent a letter to all state Medicaid directors setting out new interpretive guidance to clarify the Secretary's position on coverage determinations for medical equipment. Accordingly, the Court reconsiders the September 30, 1998 Order and finds as follows:

## I. BACKGROUND

### A. Introduction

Plaintiffs, all over age 21, are Medicaid-eligible individuals with severe mobility impairments. Their doctors have determined that Motorized and Customized Mobility Devices and Services ("MCMDS") are necessary to treat their mobility impairments. Customized wheelchairs have been in existence since the evolution of wheelchairs. Motorized wheelchairs first came into usage in 1957, over forty years ago. Today, the Medicaid programs in forty-five states provide customized wheelchairs to adults, and forty-four provide motorized wheelchairs to adults. The Defendants are state officials responsible for administering Florida's Medicaid program. The Defendants have refused to provide MCMDS to the Plaintiffs when medically necessary.

The State of Florida covers both motorized and customized mobility devices for individuals under age 21, but limits its coverage of mobility devices for individuals age 21 and over to wheelchairs costing $582 .or less. The $582 cap effectively denies both motorized and customized mobility devices to Medicaid recipients age 21 and over.[1]

The question presented is whether the State of Florida's absolute limitation of $582 on the coverage of wheelchairs provided to Plaintiffs is contrary to the purposes of the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396 (the "Medicaid Act"). This Court holds that the absolute limitation of $582 on the coverage of wheelchairs provided to Plaintiffs is contrary to the Medicaid Act in that it violates Medicaid's requirement that covered services be sufficient in amount, duration, and scope to achieve their purpose.

### B. Contentions of the Parties

Plaintiffs brought this class action against Defendants seeking injunctive and

---

1. For $582 or less, an individual can only obtain a standard sling wheelchair that does

not have a solid seat.

declaratory relief for failure to provide them with MCMDS when medically necessary. Plaintiffs claim that by denying medically necessary MCMDS and associated repairs, Defendants are violating the federal Medicaid Act. The Plaintiffs claim that the $582 cap on MCMDS is unreasonable and violates Medicaid's requirement that covered services be sufficient in amount, duration, and scope to achieve their purpose. Plaintiffs further argue that the State's denial of MCMDS to adults, while providing them to children, is unreasonable age discrimination, in violation of the Medicaid statute and regulations. Finally, Plaintiffs argue that the denial of MCMDS on the sole basis of age violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

Defendants argue that neither the federal Medicaid Act, nor the Fourteenth Amendment, requires them to provide MCMDS and associated repairs to the Plaintiffs. Defendants contend that the State of Florida need not cover the costs of customized/motorized mobility devices for its adult Medicaid population because it is not required to fund every medically necessary item of Durable Medical Equipment ("DME"). Defendants further argue that a rational basis exists for covering MCMDS for individuals under 21, while denying MCMDS to adults.

## C. The Facts

Plaintiffs are Medicaid recipients in need of customized/motorized mobility devices as prescribed by their treating provider as medically necessary.

### 1. Plaintiffs

Plaintiff Manuel Esteban has a diagnosis of spinal cord injury and tetraplegia. (Joint Stipulation at 4) (Decl. Of Banovac at 1) Tishunta Walker has tetraplegia and needs to use a ventilator as a result of a spinal cord injury. (Joint Pretrial Stipulation at 4) Shirley Bayer and Ernesto Orsino have tetraplegia as a result of multiple sclerosis. (Joint Pretrial Stipulation at 4)

Carol Warren has multiple sclerosis and has been diagnosed with tetraplegia. She has no functional use of her arms and her legs. Id. Bobby Brown has a diagnosis of spinal cord injury and tetraplegia. Id.

Carol Terrillion has post-polio syndrome and severe scoliosis. (Decl. Of Ugarte at 1) Joan Bradley has difficulty propelling her wheelchair for more than a few feet. Jeremy Varick suffered two strokes and is partially paralyzed. (Decl. Of Varick at 1)

### 2. Non–Party Proposed Class Members

Cindy Cook, Jerilyn Price, David Ridgely, Thomas Henshaw and Debra Scruggs were identified by Plaintiffs as individuals who need motorized and/or customized wheelchairs and mobility devices.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted when the evidence in the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of production. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When the moving party has met this burden by offering sufficient evidence to support the motion, the party opposing must then respond with affidavits or other evidence that establishes the existence of a genuine issue of material fact. *Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

A plaintiff cannot defeat a motion for summary judgment by resting on the conclusory allegations in the pleadings. Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510. Nor will a summary judgment motion be defeated merely on the basis of a "metaphysical doubt" about the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "or on the basis of conjecture or surmise." *Bryant v.*

*Maffucci,* 923 F.2d 979, 982 (2nd Cir.1991), *cert. den.,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). This is especially true for those issues on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Both parties concede that there are no genuine issues of material fact to be considered at trial. The remaining issues before this Court on summary judgment are whether the State of Florida's $582 cap on mobility devices for individuals over age 21 violates either the Medicaid Act or the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

### III. LEGAL ANALYSIS

### A. The Federal Medicaid Act: 42 U.S.C. § 1396

This Court will address the statutory question first so that if possible it may avoid the resolution of the constitutional issues. *Harris v. McRae,* 448 U.S. 297, 306–307, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

### 1. Introduction

The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396, is a cooperative federal-state program designed to allow states to receive matching funds from the federal government to finance necessary medical services to qualified low-income individuals. *Tallahassee Memorial Center v. Cook,* 109 F.3d 693, 697 (11th Cir.1997) (citing *Schweiker v. Gray Panthers,* 453 U.S. 34, 36, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981)). The purpose of the federal Medicaid Act is to enable each State to furnish:

(1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) **rehabilitation and other services to help such families and individuals attain or retain capacity for independence or self-care.**

42 U.S.C. § 1396 (emphasis added).

The State of Florida (the "State") has exercised its option to participate in the Medicaid program. Therefore, the State's Medicaid program is subject to the authority of the federal Medicaid Act. *Harris,* 448 U.S. at 301, 100 S.Ct. 2671; 42 U.S.C. § 1396.

### 2. Home Health Care and Durable Medical Equipment

The Medicaid Act requires participating states to provide certain mandatory services to its Medicaid recipients. 42 U.S.C. § 1396a(a)(10)(A); *see also Tallahassee Memorial,* 109 F.3d at 698. The Medicaid Act also lists optional medical services that states may elect to provide. With respect to the optional services, once a state elects to provide a service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law. *Tallahassee Memorial,* 109 F.3d at 698.

The primary coverage category utilized to cover "durable medical equipment" ("DME") is home health care services pursuant to 42 U.S.C. § 1396d(a)(7). Home health care includes DME. 42 C.F.R. § 440.70(b)(3). Home health care services are generally a mandatory service for the categorically needy, and if the State so elects, the services are required for medically needy individuals who would otherwise be institutionalized in a nursing home. *See* 42 U.S.C. §§ 1396a(a)(10)(D) and 1396a(a)(10)(C)(iv).

The issue presented here is not whether the Medicaid Act requires participating states to provide motorized or customized wheelchairs to eligible Medicaid recipients. This is so because Florida has voluntarily elected to provide wheelchairs as part of its "home health care," an optional service under the Medicaid Act. Fla.Stat. § 409.905(4) ("[t]he agency shall pay for ... durable medical equipment necessary to assist a recipient living at home ..."). Wheelchairs are among the DME that the state provides to its recipients. *See*

DME/Medical Supply Services Coverage and Limitations Handbook ("DME coverage handbook"), 2–39 (May 1996). Thus, the question presented is whether the State's limitation of $582 on the coverage of wheelchairs provided to Plaintiffs is contrary to the purposes of the Medicaid statute.

### 3. Sufficiency of Medicaid Service

■ Once the state elects to provide a service under its Medicaid plan, the service offered "must be sufficient in amount, duration and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). A State may not "arbitrarily deny or reduce the amount, duration or scope of a required service ... solely because of the diagnosis, type of illness, or condition." 42 C.F.R. § 440.230(c). The Medicaid Act gives the state discretion to determine the proper mix of amount, scope, and duration limitations on coverage as long as the care and services are provided in the "best interest of the recipients." *Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (quoting 42 U.S.C. § 1396a(a)(19)).

On September 4, 1998, the Health Care Financing Administration (HCFA) sent a letter to all state Medicaid directors setting out new interpretive guidance to clarify the Secretary's position on coverage determinations. The letter states that any State "may develop a list of pre-approved items of [medical equipment] as an administrative convenience because such a list eliminates the need to administer an extensive application process for each [medical equipment] request submitted. However, '[a medical equipment] policy that provides no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list[ ] is inconsistent with ... Federal law.'"

■ In order to comply with federal Medicaid requirements, a State must: (1) provide a timely response and employ reasonable and specific criteria by which an individual item of medical equipment will be judged for coverage; (2) make its process and criteria, as well as its list of pre-approved items, available to beneficiaries and the public; and (3) inform beneficiaries of their right to a fair hearing to determine whether an adverse decision is contrary to federal law.

■ Florida has failed to provide a reasonable and meaningful procedure for requesting items that do not appear on the State's pre-approved list. Florida has not employed reasonable and specific criteria by which motorized or customized mobility devices will be judged for coverage. Florida has essentially denied coverage to persons with severe mobility impairments based on age rather than medical necessity.

The state's coverage limitations on a service must also comport with the "fundamental concept of reasonableness." *Hunter v. Chiles,* 944 F.Supp. 914, 920 (S.D.Fla. 1996); *see* 42 C.F.R. § 440.230(b). The general purpose of the Federal Medicaid Statute is to help individuals "attain or retain capacity for independence or self-care." 42 U.S.C. § 1396. The specific purpose for providing DME, a home health care service, is "to promote, maintain or restore health and minimize the effects of illness, disability or a disabling condition." DME coverage handbook, 1–1 (July 1997). To this end, the state has chosen to provide "wheelchairs" to its Medicaid recipients. According to the state's DME coverage handbook,

> [a] wheelchair is a chair mounted on wheels used to transport a non-ambulatory individual ... Medicaid may reimburse for a wheelchair **when the recipient is non-ambulatory, has severely limited mobility or it is necessary to accommodate the recipient's physical characteristics.**

DME coverage handbook, 2–39 (May 1996) (emphasis added).

In *Alexander v. Choate,* the Supreme Court upheld a 14–day limitation on inpatient coverage even though the patient needed a longer stay because "Medicaid

programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her needs." *Id.* at 303, 105 S.Ct. 712. This case is distinguishable from *Alexander v. Choate,* however, because when the State provides a manual wheelchair to a person with a severe mobility impairment it falls far short of imprecise tailoring. At best it is arbitrary.

The State provides wheelchairs to an eligible Medicaid recipient "when the recipient is non-ambulatory, has severely limited mobility or it is necessary to accommodate the recipient's physical characteristics." DME coverage handbook, 2–39 (May 1996). Yet, the manual wheelchair that the State provides is insufficient to "minimize the effects of" the Plaintiffs' mobility impairment. Thus, the State's absolute limitation on coverage for wheelchairs runs counter to its articulated purpose for including wheelchairs under its DME coverage: to minimize the effects of a mobility impairment.[2] The limitation on coverage also runs counter to the Federal Medicaid purpose of helping individuals "attain or retain capacity for independence or self-care." 42 U.S.C. § 1396. Accordingly, this Court finds that the $582 cap on wheelchairs for adults diagnosed as having a severe mobility impairment is insufficient to reasonably achieve the State's own purpose for providing wheelchairs to such individuals.

### 4. Denial of Medicaid Funding on the Basis of Age

The DME coverage handbook explains the types of wheelchairs it covers under the heading, "Categories of Wheelchairs," as follows:

> Medicaid may reimburse for a wheelchair when the recipient is confined to a bed or chair. Reimbursement may be made for the following:

- a narrow wheelchair required due to narrow doorways in the home;
- a lightweight wheelchair required when the recipient cannot propel a standard wheelchair;
- a motorized wheelchair required when medical needs cannot be met by a less costly alternative;
- other models if the features and accessories are medically necessary; and
- a customized wheelchair that is specially constructed and not available from manufacturers.

DME coverage handbook, 2–39 (May 1996).

Defendants contend that excluding persons from coverage solely because they are over 21 is reasonable because the Medicaid statute itself makes categories of services mandatory for children that are optional for adults. Defendants contend that the Early Periodic Screening, Diagnostic and Treatment ("EPSDT") program authorizes the provision of services to EPSDT clients that are not provided to other Medicaid recipients. 42 U.S.C. § 1396d(a)(4)(B); 42 C.F.R. §§ 441.50–62. However, the special services provided to EPSDT clients under the age of 21 are services directly related to their status as children. These services include immunizations, periodic dental checkups, eye glasses, child health maintenance, and early diagnosis.

Under the State's EPSDT program the State provides MCMDS, described in the DME coverage handbook, to individuals age 21 and under. Unless a medically eligible individual meets the state's age requirement (under age 21), that individual will be denied medically necessary MCMDS, as detailed in the state's DME coverage handbook.

This Court has previously held that "Medicaid funding cannot be denied on the

---

**2.** The Court disagrees with the Defendants' contention that "all wheelchairs effectuate mobility." Defendants' Motion for Summary Judgment at 8. As the facts of the present case reveal, individuals with severe mobility impairments are unable to propel a standard wheelchair. Under these circumstances, standard wheelchairs do not effectuate mobility.

basis of age." *Hunter*, 944 F.Supp. at 920; *see also Salgado v. Kirschner*, 179 Ariz. 301, 878 P.2d 659, 660 (1994). In *Hunter v. Chiles*, the Court disagreed with the argument that the Defendants make here: that the state may choose to deny optional services to eligible individuals based entirely on age. *Id.* The Court in *Hunter* held that Augmentative Communication Devices and Services ("ACDS"), which were provided to Medicaid recipients under age 21 under the EPSDT program, could not be denied to the Plaintiffs, who had severe speech disabilities, solely on the basis of age. 944 F.Supp. at 920.

In *Salgado*, an Arizona Medicaid program participant was denied life sustaining liver transplant coverage because she was over 21. *Id.* 878 P.2d at 660. The state argued that it could choose to provide transplants exclusively to children based on the EPSDT program. The Supreme Court of Arizona found that it was unreasonable to allocate treatment within a service category solely on the basis of age.

■ This Court finds, that once Florida chose to provide wheelchairs to eligible Medicaid recipients, Florida may not arbitrarily or unreasonably deny motorized wheelchairs to Plaintiffs entirely on the basis of age. Eleventh Circuit precedent makes clear that the state Medicaid plan must meet the test of reasonableness. In *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980), the court held that a state could adopt a definition of medical necessity that places reasonable limits on a physician's discretion, and therefore, could ban reimbursement for experimental forms of treatment. *Id.* at 1154–55.

However, the Supreme Court has stated that although the states have broad discretion to adopt standards, the standards must be reasonable and consistent with the objectives of the Act. *Beal v. Doe*, 432 U.S. 438, 444, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977). The Court finds that the State of Florida's absolute limitation of $582 on the coverage of wheelchairs provided to Plaintiffs who have severe mobility impairments entirely on the basis of age fails the reasonableness test and is contrary to the purposes of the Medicaid statute.

This Court holds that once the State voluntarily elects to provide wheelchairs to eligible Medicaid recipients, it must provide wheelchairs that are sufficient in amount, duration and scope to achieve their purpose. Providing manual wheelchairs to eligible Medicaid recipients with severe mobility impairments is not sufficient to achieve the State's purpose. It follows naturally that the State is then required to provide the associated repairs (consistent with the DME coverage handbook) necessary to maintain the motorized wheelchairs in dependable working order. DME coverage handbook, 2–9 (July 1997).

In addition, this Court holds that the State's limitation of coverage for the parties in this action seeking customized or motorized wheelchairs with severe mobility impairments is not sufficient in amount, duration and scope to achieve their purpose.

### B. Equal Protection

Based on the foregoing analysis, the Court declines to reach the Plaintiffs' claims under the equal protection clause of the United States Constitution.

### CONCLUSION

Therefore it is,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Amend the Complaint (D.E.# 23) is GRANTED NUNC PRO TUNC. It is further

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion for Summary Judgment (D.E.# 33) is GRANTED as to the following Plaintiffs: Manuel Esteban, Tishunta Walker, Shirley Bayer, Ernesto Orsino, Carol Warren, and Bobby Brown, Carol Terrillion, Joan Bradley, Jeremy Varick, Cindy Cook, Jerilyn Price, David Ridgely, Thomas Henshaw and Debra Scruggs. It is further

**ORDERED AND ADJUDGED** that the State of Florida is hereby ENJOINED

from using the list of covered items as the exclusive determinant of Medicaid coverage for DME. It is further

**ORDERED AND ADJUDGED** that within thirty (30) days the State of Florida is DIRECTED to reprocess petitioners' requests for coverage in compliance with this Order. · It is further

**ORDERED AND ADJUDGED** that the Plaintiffs and Defendants are hereby DIRECTED to file a proposed form of Final Judgment for entry herein within twenty days from the date of this Order. It is further

**ORDERED AND ADJUDGED** that the case is CLOSED and all pending motions are DENIED AS MOOT.